Will the clerk please call the next case? 3-24-06-48 Kenneth Blair and Sarah Blair, accompanied by Mark Daniels from Eggleston Street, LLC, 283 Eggleston, LLC, at all, have a capital use by traffic. Mr. Daniel, you may proceed. Good afternoon. Good afternoon. My name is Mark Daniel with the Daniel Law Office. I represent Kenneth and Sarah, no H, Blair, B-L-A-I-R. The Blairs are residents in Elmhurst that own a townhome unit adjacent to a parking lot. That townhome development that they are in and a portion of the parking lot are the subject of a 1971 judgment in the Circuit Court of DuPage County. That judgment essentially allowed a project to proceed provided that the westerly extension, and I believe this direction would be west for you, is to remain vacant other than surfacing. No construction other than surfacing would occur. The development did not proceed. In 1990, the Circuit Court amended the judgment order on request to the city of Elmhurst and signatures of two attorneys, one acting for the owner of the eventual townhome development and the area that was to remain vacant, as well as the city attorney. This matters before you on the question of whether or not under 2619.1, essentially 2619 in this case, the Circuit Court erred in finding that the complaint failed to state a cause of action for violation of that judgment order by the Blairs as successor owner to part of the development where the townhomes are located, their unit is located, against the owner of another part of the development, the westerly portion of the development. So essentially, the judgment order in 71 and 90 preceded the division of the property, and now you have Eggleston Street as the owner of the westerly portion and the townhome association and remainder of townhome unit owners owning the rest of it. The Blairs own those units. Before I dive too far into the merits, I would like to raise a jurisdictional point with you, if I may. We raised Blumenthal and Paff in our brief in the discussion of jurisdiction. Since the filing of briefs, I believe they may have been completed by then, everything in the case has been wrapped up and finalized. This came before you under Rule 304A, and there was a finding in the Circuit Court under 304A. At this point, the claim before you, Count 3 in the amended complaint filed by the Blairs, the Blairs only, is the only live part of that case. Everything else is final. All right, I believe Mr. Day can clarify that as well. So the issue that we've raised here is one of contract, essentially. The contract of record. So the contract is the modification of the 1970 case, 1971 court order in 1990. Yes. The developer undertook the benefits of that order, built the townhome development project, and spun off or separated out the westerly portion for $15,000. It's a good bit of land for that price. That land was never relieved of the burdens of the judgment order from 1990, which were the same burdens in 1971, that it shall remain vacant. The Blairs pursued this on a matter of contract as a successor owner, claiming back through the same owner, developer, that obtained the 1990 amendment, and the same two sets of owners, Hatch was the name of the primary plaintiff in the original case. They claimed title through the same ownership. And on that division, the judgment order, which was an injunction affecting the property, passed with title. So each holder of real estate from the point of division forward is still bound by the burdens of the judgment. The townhomes were built. Those 13 townhomes still exist today. And the Blairs, as a townhome owner, are asking in count three to find that there is, by reason of a violation of this judgment by one of the successor owners, there's a breach of contract, and we need to have the contract enforced. That land can only have surfacing. It can't have the tall, bright parking lot lights. It cannot have the underground detention system that shifts water all over the place. It cannot have the fencing. They can use landscaping. They can have a daytime parking lot that doesn't require lights. But they can't have structures other than the surface. That is the issue that we're dealing with. We cite Hammer-Schmidt versus Town of Sangamon Highway Commissioner second district case from 1955 for the premise that judgments run with the land. To the extent that we have a situation here that developed in the circuit court, it is because there was a, I would say on 2619, a re-characterization of count three. The circuit court, among its remedies, among its findings, found that there was a failure to exhaust remedies. There's no exhaustion required in order to enforce a contract. All right? In essence, the claim was not reviewed as a contract claim. It was not reviewed as successors in interest enforcing a judgment among each other. These are people that claim title through the same developer of land. One successor owner claiming against the other. This is not someone challenging the issuance of a permit with the approval of a zoning ordinance. This is a circuit. And because of that, Counsel, you don't believe that the city needed to be part of your lawsuit at that time, even though they were party or signature to the 1990 agreement? Absolutely. It's a contract claim. It's inter-parties between successor owners. So whatever permit the city issued, the city could tell them they can go build the Taj Mahal. But it is more than surfacing. And that is between the parties to enforce. There's nothing in the code at Elmhurst that says you can't build any more than surfacing here. It's in the judgment, in the obligations that run between the two successor owners of the property. You may hear a lot on argument from Eggleston Street that the 1971 judgment and the 90 amendment to the judgment are void. That horse is out of the barn. Not only did the developer participate in seeking the judgment in 1971 and have a role in the city's effort to unilaterally amend the judgment in 1990 with no substitution of parties, but this, again, is a contract case. Counsel, you said unilaterally. I thought you said that the owners were signatures. Well, they did sign on to it. They didn't appear in the case. So I should be clear, I suppose, on that front. The judgment order is signed by the developer's attorney. There was no appearance of the trustee owner at that time. The parties' situation did not catch up in the case. And we're still in that process due to another appeal that this court heard and decided in 2024. In this instance, they cannot claim the judgment is void. Not only do you have two very respected judges, I think both of whom were chief judges in DuPage County during their tenure, make a decision that a zoning ordinance was unconstitutional as applied, that is inherently judicial power that we're dealing with. But they did it correctly. The complaint in that case said, we'd like to have you apply a different zoning district. The city in that case answered the complaint and the judges decided the case in 1971 on the answer and complaint. In that instance, the circuit judge looks at what the authority is. And under the cases that we cite, there are many of them. City Service Oil Company is one of them. Anything that developed in those LaSalle factors. We cite two cases from the first district involving the city of Highland Park, Fiore 1966 and 1968. I would say it's not judicial power to zone property. Judges don't zone property in these zoning cases. What judges do is they determine whether the classification is reasonable to the property or whether it's unreasonable to the extent of it being unconstitutional. That's what happened in this case. The ordinance in effect was unconstitutional as applied to the property. Didn't that change, though, counsel? That apartment building was never built. It was never built. 42 units. So it was an as-applied challenge. How does the future apply to the past in that respect? Well, in 1990, it applied so that the city went in on a motion to amend the judgment order for the development of 13 townhouses. Did they change the zoning classification? If it mattered. Under the terms of the judgment order, technically, I believe the LA Supreme Court says that property such as this is unzoned because it's subject to the judgment order that the zoning ordinance is unconstitutional as applied. That would be city service. I believe Fiore states that as well. It's unzoned. So in city service, for example, which is cited, I think, in our brief, and it may be cited in Appellee's brief as well, in city service, the owner of the property wanted to do something different with the property, and they were bound by the court order and could not do that even if the zoning ordinance allowed it because the property was unzoned. In this case, in 1990, the developer went in and sought the amendment to the order, and that's what led to the 13 townhomes that are constructed, one of which is owned by Kenneth and Sarah Blair. I believe that is the meat of the issue. There are some smaller issues that we're dealing with. The necessary party issue, because this is a contract basis, we don't believe the city is a necessary party at all. Dismissal right under 2619, if the city were a necessary party, they can be added. The only interest the city has is in a stormwater easement where they have a right to have the water flow in a certain direction towards city facilities. Evaluation of that property right isn't impacted by the lighting or the fencing that we're dealing with. What did surfacing actually mean? It seems kind of nebulous. Can you put in a parking lot? Can you just cut the grass? As alleged in the complaint, it could be hard surface. The declaration of covenants for the association indicated that there were various cross-easements that were addressed in count three of the complaint. Walking paths, you could have a vehicular path. If necessary, the developer had access across the 13 townhome site, a portion of the site, to the west area. Surfacing could have been a road, a sidewalk. It could be grass, asphalt, gravel, any kind of surfacing. But when you get into these street lights that light the parking lot that disturb everything in the residential area, it's a different story. You can't have a parking lot with no street lights. You can. There are plenty of parking lots, I think practically, that have no lighting. And they could operate only during the day. Those spaces could only be available only during the day. Now, the folks on the Engleston street side argue that, well, because we have surfacing, that's the camel's head under the tent. Now we can have everything else the city requires for an overnight parking lot. Well, I'm sorry, you can choose not to have an overnight parking lot. Didn't the judge also come to the conclusion that the parking lot was just surfacing, that they were one and the same? The judge came to the conclusion that the parking lot, fencing, and street lights all fit within the surfacing authorization. That's where we come before you on appeal, and we address Black's Dictionary and some Illinois decisions that highlight what structures are. And there are cases that hold that street lights are structures, cases that hold that water mains are structures. So is there a 615 issue also with the court reaching that conclusion? Is that something you're concerned about? Yes, it is. So you would want us to address that issue also? Yes, we would. We're not challenging the court's finding that the pavement is surfacing. We're not challenging that. That's, I think, the foregone conclusion that you'd look sideways on the next time I appear before you. I don't think there's any way we could argue that. It's the other improvements that disturb the neighborhood. And it's my understanding that it's done, it's built. It is built. This has been an ongoing challenge since probably 2021. The initial effort was by Otis Dungan and his wife. Otis is here. Mr. Blair couldn't be here due to a procedure he's having. But they filed a petition and intervention in the Hatch litigation to enforce it directly. That case was on appeal, sent back, and then consolidated with this for a period. I see my time is up. I'm happy to answer any questions. I don't know that this was actually raised, but it seems to me that a lot of the modern-day requirements for parking and sidewalks like lighting and curb and gutter, all these things maybe didn't exist in 1970, maybe not even in 1990. These are, I would imagine, more modern, more recent ordinance types of requirements. Is that fair? I would have to look at the City of Elmhurst's codes on that. I believe that at one point in the case, Eggleston Street filed prior ordinances. I think they're somewhere in the record in this case where they showed that lighting may have been a requirement previously. I know screening was, but whether it was a fence or landscape screening, it is still an option of the owner. Landscape screening still operates as a screen rather than having a structure. The lighting, it should go back to 1990 when the amendment occurred. If Elmhurst enacted any of these ordinances requiring lighting and so on after this, we'll call it a contract, was formed, does that make any difference in the case? For us, no. This is a contract. To the extent that the city amends its ordinances, there are two questions that come up. First of all, you have conditions in a judgment, which is inherently judicial. If the city is going to use its ordinances to amend the conditions of the 1990 Judgment Order, an inherently judicial act, that's legislative authority being exercised to defeat inherently judicial rulings. That gets into the Fiore 1968 case, where the appellate court had indicated its position on a judgment in the 1st District. As the mandate was issued from the appellate court, Highland Park decided to amend its ordinance to evade the appellate court's ruling. In that case, the 1st District said, no, no, no, no, we're not going to have that. That declaration that an ordinance is unconstitutional as applied is inherently judicial, and a legislative body, whether it's the municipality, that's an issue in Highland Park, or the state, the Illinois Marriage and Dissolution Act. That's another one of the cases that we cite. The state legislature doesn't have that authority to trump a judgment. Any further questions? Thank you. Okay. If you have any, I'm going to reply. Mr. Day, you may respond. Thank you very much, Your Honor. Good afternoon. My name is Scott Day. I'm here with my law partner, Rachel Robert. We have the privilege of representing Eggleston, LLC, the appellee in this case. If you read the two briefs, you will see that it's almost two completely different theories in legal sets of facts and circumstances that are important. Can you speak up a little bit? The mics really don't. They're used to record. They're not really amplification. I'm old, and I occasionally have a raspy, soft-spoken voice, so I will do my best, Your Honor. I apologize for being old. Well, I don't think you're old. Well, let me start by saying this issue is count three. It's as simple as count three, and contrary to what counsel just represented to this particular panel, if you read count three, the prayer for relief is an injunction, and the injunction that they wanted was to dig up the underground storage, completely tear out the parking lot, all of the pavement improvements and virtually the entire site, and repave it to dirt. That was with a prayer of relief for count three. So if you go back and look at count three, that's what they pleaded, and that's what we were litigating. Now, with that in mind, the court needs to understand, this case did start in 2021, not in 2023, because it was a zoning case, and we went through the entire zoning process, and this property was rezoned by the city in 1992 with the north half of this parking lot in the R2 zoning classification, the south half in the R4 classification. So it was rezoned after this 1990 judgment order by the city itself. Now, this particular parking lot is permitted as a conditional use, and all of these attachments to this were conditions that weren't placed on there by the applicant. We are the party that built this parking lot, and we built it in conformity with the conditions that were imposed on us by the city. Instead, if you're going to build a parking lot, we want a fencing to provide some privacy to the property owners here. We want some bollards so that if cars are pulling into the parking lot adjacent to the fence, they're not going to, you know, erroneously be put into drive. Councilor, are you suggesting that the theory that they've espoused here, and I believe in their briefs, is simply that we are bound with an agreement that says you can't build, you can't do anything more than surface. Let's say it was a pool. You can't build a pool. I'm going to sell you this land, but you can't build a pool. All of a sudden the city says, you know what, you can build a pool. We'll change your zoning, you can build a pool. I can still enforce it against my neighbor that I conveyed the land to, right? I would agree that today they represented that this 1990 judgment order is now a contract. And if you go back and you look at the case, originally the 1971 judgment order was a judgment order, and it was nothing more than a judgment order. And the 1990 was an amendment of a judgment order, nothing more than an amendment of a judgment order. So the judgment order is defined by the content of the case of which it is responsible for generating. Now what then happened, if you look at their reply brief, it's no longer a judgment order. Now it's a permanent injunction. If you read the reply brief that they filed in this case, this 1971 judgment and the 1990 amendment of the judgment order, now it's been converted to a permanent injunction. And they have 37 references to the order now being an injunction. Now today when they step before the court, now it's a contract. We're all bored in terms of what this document even is. I want to start with the supposition that it is what it says it is. It's a judgment order, nothing more. It's a judgment order within an as-applied substantive due process case. And the scope of the judge's jurisdiction and the authority that he has in defining zoning is really driven by what the Supreme Court has said and what our Constitution says. The court has no zoning power, none. When the court is reviewing a zoning case, the power of the court is limited to one thing. The zoning decision either is within the constitutional authority of the legislative branch or it's not. It's one or the other. And that's the full extent of the scope of the court's authority. So in this particular case, the scope of what the court could do is they could analyze the decision to deny a MAP amendment and determine whether or not the denial was driven by fidelity to and rational connection to the public welfare. If it is, it's a valid denial. And if it's not, then it's arbitrary and capricious, and it's unconstitutional. That's as far as the court's authority goes. So within that context, I'd like to turn to where we're at on the judgment order because I think that it drives what the trial court in 2023 could and could not do in this particular case. The narrowest legal approach is simply this. To interrupt you, just to be clear. The 1971 judgment is not a contractual agreement between parties. It is not. It's imposed by the court. Okay. And that leads you then logically to the next step of what? Well, the question is in relationship to the 1971 judgment order. They are insisting that a 52-year-old judgment order became the zoning for this parcel of property and that the city, half a century later, is powerless to make a zoning decision regarding what belongs on this parcel of property. They made a zoning decision in this case. They zoned the property for conditional uses that permitted a parking lot, and then when they zoned it, they imposed on it not only a surface-level parking lot, but they also said, if you're going to build a parking lot, we want certain life safety elements constructed within it in order to protect the public welfare. In other words, these safety elements that the city… Counsel, I think we understand zoning and the fact that they want to impose these things on the parking lot. The question is, Fury, for example, counsel said if Fury is saying, no, that judgment does survive, that judgment, how that court… you disagree with that? No. Judge, I had to tack this at the trial court level in multiple different ways I'd like to address. Please. Okay. The first way, if you don't even want to get into whether or not the trial court had authority to attach all these additional conditions on this particular… Let's just accept that the entire ordinance says what it says, and you want to just enforce it. Well, the first question is, what is surfacing structures? I don't know what that term is. If surfacing structures are crystal clear, then it's a zoning requirement. And if they're not clear, the city couldn't create a zoning ordinance that's vague and undefinable. It's unconstitutional to have a vague ordinance. But if you want to say that the surfacing restriction is not vague and it's not subject to different understandings, let's just go with it. A surface-level parking lot is clearly permitted. What the trial court said is, we're going to restrict what can go on this parcel of property. We're going to prevent any structures on this particular chunk of dirt, and we're going to say that they can only be surfacing structures, whatever that means. The trial court said, look, if you read the restriction itself, it facially even references that within this area you can do parking. There's two different references to surfacing, and they specifically, in the judgment order, say that with respect to side yards that the court created, they said you can also have surfacing for parking. So clearly, a surface-level parking lot is a permitted structure. That's a given. So, sir, if a parking lot is permitted, you have to read both the judgment-slash-contract, however you want to characterize it. You have to read that with ordinances regarding public safety. Exactly.  Let's make it coexist. This first argument, I think, is a common-sense argument. If the trial court is rezoning this parcel, and they had authority to do it in 1971, they couldn't permit a surface-level parking lot because the zoning power is only valid to protect the public health, welfare, and safety, and then simultaneously, without even using the words, prevent the addition of bollards and fencing and lighting and other life-safety elements that serve the public welfare. In other words, if he's zoning and saying the only thing he can build now is surfacing, the absence of the life-safety elements would be contrary to the public welfare, and it would be beyond the authority of the city. If the city says you need lighting and bollards and things like that for public safety, the court can't prevent it from doing it because doing it is defeating the Home Rule Municipality's legislative authority to protect the public health and welfare. So the first element is simply this. If you don't want to even get into reanalyzing the 1971 judgment order or even the amendment, all you have to do is recognize that the surface-level parking lot is valid. It's legitimate. The trial court said you can do a surface-level parking lot at this location. And part two, any life-safety element... In 1971. I'm sorry, in 1971. Right. You can't then interpret what he wrote in 1971 and was unchanged in 1990 as permitting a surface-level parking lot but prohibiting the city that's in charge of permitting it from attaching bollards and lighting and things like that that protect the public health, welfare, and safety. Those two things are mutually incompatible. That's item number one. That's the narrowest possible reading that this court could apply. It's simply that we're not going to get into whether or not it's unvalid in 71 or 90, but if a surface-level parking lot's permitted, the city has the legislative authority to attach permitting safety requirements to a permitted land use. That's part one. Part two, I want to give you the broadest possible attack as it relates to this 1971 judgment order and whether or not it precludes this parking lot. And that is, I think, that the 1971 judgment order is facially void ad initio, meaning the trial court, at the point in time that the trial court passed a judgment on an as-applied substantive due process challenge, you have to look at the scope of what it had in front of him, and that is limited by the complaint. The record on this case is as scant as you can get. The complaint does not have a specific plan or anything of the nature. It simply says we want to rezone this parcel of property. We want to permit apartments on this parcel of property. We ask for rezoning without any kind of plan. We ask for rezoning from our residential single-family classification to the B3 classification that would allow us to do apartments. That's what the complaint says. Now, what the court ordered is the court said, I'm going to basically strike the existing residential zoning, and declare that it's invalid, and I'm going to indicate that if you apply for an apartment project of up to 42 units, the city's going to have to permit it. That part of the order may or may not be valid. I don't have a challenge with respect to that part of the order. Where I have a challenge with respect to the order is the court is now attaching a whole bunch of specific conditions. It's writing land-use regulation. It is saying what kind of structures are permitted on part of this site. It is saying what the yard dimensions are going to be. It is defining a whole bunch of land-use specifications. The Supreme Court cases that we gave you said that a trial court and an as-applied substance due process case, they don't have authority to do that. Their scope of authority is to examine the restriction that was imposed on the property and determine if the restriction that was imposed is rationally connected to the public welfare. And to do that, they're supposed to go through and they're supposed to look at the six LaSalle factors and the two that were added in the Sinclair Pipeline case. And the court is to determine whether or not the public welfare is defined by the city at a specific point in time and at a specific location justifies the court overturning the restriction that was imposed by the community. So we have to go back and look at this 1970 judgment and see if it was overly broad, overly overreaching? You have to be. This is the broadest version of what I'm saying. The first one is the narrowest one. You don't even have to go through this. But the second one, and the court concluded that this is correct, the 1971 ordinance does not permanently deprive a municipality like Elmhurst of land use control. A decision of this nature is a decision that is a point in time. The way that a LaSalle factor case is done, the way that a Sinclair Pipeline case is done, is the trial court is supposed to examine the situation and the facts and circumstances as of that date, driven by the decisions that the city's already made. So how long does it last? Do we have to look at the rule and its perpetuities? If you look at what the court said, and we've cited a case for it, an appellate court decision, where the appellate court said, it's really hard to have any kind of a shelf life in an as-applied substantive due process case. And the reason that the appellate court said that is they said the situation changes over time. That decision is within our brief. So you'll see that's part of it. Do you have the case? You don't need to give me a cite, just the name. I do. That decision is Brown v. DuPage County. Thank you. It was 168 LF 3rd 473. It's a 1988. It's in your brief. Yes. Okay. Correct. Okay, so the second version, which is what I would call the broadest approach that the Court could take, is to simply say that the judge, when he put all these goofy restrictions in terms of surfacing and what you can and can't do, that's clearly beyond the authority of a trial judge in an as-applied substantive due process case. And we gave you Supreme Court decisions that hold that. Treadway is the case that is most clearly on point. But then there's the Yes, sir. Your red light is on. I'm aware. Would you like to wrap up? I would like to wrap up.  The third approach was the res judicata approach, that question whether or not you could ever have res judicata. But I do want to say that I'm in agreement with what Mr. Daniel indicated. The subsequent orders of the trial court are not in your record as they currently exist. They should be. You should take judicial notice that the entirety of this case, with the exception of this appeal, has been finalized. Those matters are all final. We can provide you with updates of the court record. But that includes counts one, two, and four. And understand that all of this stuff about who owned the development parcel and whether or not we were ever part of the development parcel, that was resolved by the trial court. You'll find that in our brief. Nobody's appealing any other aspects of these. Well, he is. The challenge that you heard today is that somehow or other, our parcel of property was part of the townhome development. The trial court ruled that it wasn't. You've already got a final judgment order from the trial court below that this was not part of the townhome development. And I can cite you to the case that, or the attachment. You can always file a motion to supplement the record. I understand that. This was a document that is attached to the complaint. And the basis for dismissal of counts one, two, and three was a document. It's actually record C2049V2. This is, the townhome development wasn't townhomes. It was condos. And the Condo Act requires that you file a plat. The plat that you have in your record specifically says that our parcel is not included in the 1990 development. It has the words on our plat saying that our parcel of property was not included. And that was the basis of the trial court entering an order dismissing counts one, two, and four. That's now a final order. So we shouldn't be arguing that here. Thank you, Robert. Okay. Just a moment. No questions? No questions. Okay. There are no further questions from the court. Thank you. Mr. Daniel, you may reply. If I may, I'll pick up where Mr. Day left off. Please don't be confused with townhome development and townhome development tract. As addressed in the brief, as addressed in the complaint, the townhome development tract is the land legally described by the judgment order. Lot five in Hoffman's division plus some additional land to the east of that. The 1990 or 1971? Both of them. It's a tract of land. What Mr. Day held up as the, quote, unquote, plat of condominium shows the land that is separate from what is referred to as the transite parcel. The transite parcel is where the violative activity is going on, not within the townhome development tract. All right? Remember when I said you've got a large square and then off to the west, you've got an offshoot westerly? That's the transite parcel to the west. That's the division of land that occurred. From a single owner of one tract to at least two owners of two tracts, one being the westerly parcel and, in this case, the Blairs being the owner of a townhome unit in the plat that Mr. Day just held up. In that judgment order, paragraph 9, and this is in the amended judgment order as well, I'll read from that at C3631B4. It's A18 of the appellant's appendix. The city and old Kent agree on behalf of their respective successors and assigns to abide by the order of this court and by this amended judgment order. The order being the 1971 and this amended judgment order being the 1990. Mr. Day, I'm sorry, Begleston Street can claim all day that there's no element of contract, that there is contract here, not just by the terms using these terms that I just read to you, but under the law by division of title following a judgment that pertains to the property. How long can the judgment continue? Mr. Day had some comments on that, but remember his response. And remember that Brown is also one of the cases addressed by this appellate court in the Hatch Appeal from 2024, that decision from April 3rd of 24. Brown does say circumstances can change and you can modify an injunction. It requires a motion, such as what you saw in 1990. It requires changed circumstances. Nothing here changed. That's not even before the court. That may be part of the proofs after you get past motions to dismiss, but nothing here changed. The other way to amend the judgment order is by agreement, which is what happened in 1990, and you were not going to have an agreement that you can put a 25 or 30 foot tall LED light outside of someone's window or deck. You were not going to have an agreement that they can put a fence up five or six feet from the wall of someone's town home. So they just went at it on their own. So there are elements of contract. Mr. Day opened with a discussion of how we tried to blow the barn doors off of everything, and this whole surfacing discussion at the outset of the Eggleston Street argument is incorrect. We simply asked for the structures noted in paragraph 127 of the complaint be ordered removed. We're not asking you to tear up the parking lot. We're not saying that you can't park cars on it. You can't walk over it. We're saying get rid of the fences, lights, and the problematic issues. But that is at page C, 1902B2. Are those prohibited or allowed through the present ordinance? Those are required under the present ordinance that require. Under the agreement, our position is they're not allowed. So they would have to operate a parking lot without the lights and the fencing, and it wouldn't be operable after the sun goes down, after it's too dark. Practically speaking, insurance comes into play and everything else, but they can park during the day. Okay, thank you. As far as cases that we cited, SDS Partners is in our brief. I'd ask you to take a look at Sweeting v. Campbell and Rinas v. Schweiss, which all address the continuity of judgments as between parties when there's a convenience of real estate like what we're dealing with here. The restatement of judgments is also mentioned. I want to thank you for your time. If you have questions. Very fascinating case. It's an onion of many layers. It is. It's a privilege to be back in front of you. I do want to congratulate Mr. Day and Ms. Robert. I've worked against them many years, over 30 I think now, and they've been terrific to work with. Mr. Day is close to retirement, so I do want to thank him for all the time as well. Thank you. Just a moment. There may be a call. No, I don't have any other questions. Thank you, counsel. And the bench thanks you for your quote, turns for the collegiality and acknowledgement thereof. Thank you. Thank you. Thank you, counsel, again, for your arguments in this matter. It will be taken under advisement and a written disposition shall issue. At this time, the court will stand in brief recess for panel change.